Slip Op. 20-176

**UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| **CELIK HALAT VE TEL SANAYI A.S.,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**UNITED STATES,**<br><br>**Defendant,**<br><br>**and**<br><br>**INSTEEL WIRE PRODUCTS COMPANY ET AL.,**<br><br>**Defendant-Intervenors.** | **Before: Claire R. Kelly, Judge**<br><br>**Court No. 20-03848** |

**OPINION AND ORDER**

[Denying plaintiff's motion for a temporary restraining order and preliminary injunction.]

Dated: December 6, 2020

Irene H. Chen, Chen Law Group, LLC, of Rockville, MD, for plaintiff.

Tara K. Hogan, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for defendant. Also on the brief was Jeffrey Bossert Clark, Acting Assistant Attorney General, Jeanne E. Davidson, Director, and Reginald T. Blades, Jr., Assistant Director. Of counsel were Reza Karamloo and Jesus Saenz, Attorneys, Office of the Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce.

Brooke M. Ringel, Paul C. Rosenthal, Kathleen W. Cannon, R. Alan Luberda, and Joshua R. Morey, Kelley Drye & Warren, LLP, of Washington, DC, for defendant-intervenors Insteel Wire Products Company et al.

Kelly, Judge: Before the court is Plaintiff Celik Halat ve Tel Sanayi A.S.'s ("Celik" or "Plaintiff") motion for a temporary restraining order ("TRO") and preliminary injunction. See Pl.'s Mot. for [TRO] & Prelim. Injunction Confidential Version, Nov. 19, 2020, ECF No. 15 ("Pl.'s Mot."). Defendant opposes Plaintiff's motion. See Def.'s Resp. to Pl.'s Mots. for [TRO] & Prelim. Injunction, Dec. 4, 2020, ECF No. 20 ("Def.'s Resp."). For the following reasons, Plaintiff's motion is denied.

## BACKGROUND

On May 6, 2020, the U.S. Department of Commerce ("Commerce") initiated its countervailing duty ("CVD") investigation of prestressed concrete steel wire ("PC Strand") from the Republic of Turkey ("Turkey"). See Compl. at ¶ 2, Nov. 19, 2020, ECF No. 2 ("Compl."); see also [PC Strand] from [Turkey], 85 Fed. Reg. 28,610, 28,612 (Dep't Commerce May 13, 2020) (initiation of [CVD] investigation). On June 25, 2020, Commerce selected Celik for individual examination. See Compl. at ¶ 3. That same day, Commerce issued a revised initial CVD questionnaire to the Turkish government and set a deadline of August 10, 2020 at 5:00 pm Eastern Daylight Time for filing the final business proprietary information ("BPI") and the public CVD questionnaire response. See id. at ¶¶ 3, 9.

Plaintiff states that on or about August 4, 2020, due in part to a medical situation of counsel, it filed a request for a one-week extension of the August 7, 2020 deadline to file its response to Section III of Commerce's CVD questionnaire, which Commerce declined. See id. at ¶ 7. On August 7, 2020, Plaintiff timely filed its BPI

response. See id. at ¶ 8. However, on August 10, 2020, purportedly due to counsel's medical situation, Plaintiff overlooked the two-hour time difference between Mountain Daylight Time and Eastern Daylight Time when timing its submission, and submitted its response at 4:27 pm MDT (6:27 pm EDT) instead of 4:27 pm EDT. See id. at ¶¶ 10, 12.[1]

On August 20, 2020, after learning that its CVD response was untimely submitted and rejected, Plaintiff requested reconsideration of Commerce's rejection. See id. at ¶¶ 11–14. Commerce declined and continued to reject Plaintiff's August 7, 2020 and August 10, 2020 filings of the BPI and public versions of its questionnaire responses. See id. at ¶¶ 15–16. In the concurrent antidumping duty ("ADD") investigation, Celik's counsel requested a meeting with Commerce to discuss its denial of the questionnaire responses in both the ADD and the CVD proceedings. See Pl.'s Mot. at 3. On September 4, 2020, Celik's counsel met with Commerce to discuss its denial of the responses. See id. at 3–4.

For its preliminary determination, Commerce applied adverse facts available with an adverse inference ("AFA") after finding that Celik significantly impeded its

---

[1] It appears that there is a typographical error in Plaintiff's complaint, and the court presumes that Plaintiff intended to state that, in filing its submission at 4:27 pm MDT, it overlooked the time difference between MDT and EDT. What Plaintiff actually states is that "the filing was actually submitted at 6:27 PM MDT, not 4:27 PM EDT[.]" Compl. at ¶ 12. If this were true, then Plaintiff's filing was not submitted until 8:27pm EDT.

investigation, and assigned a CVD subsidy and cash deposit rate of 135.06 percent.[2] See [PC Strand] from [Turkey], 85 Fed. Reg. 59,287, 59,288 (Dep't Commerce Sept. 21, 2020) (prelim. affirmative [CVD] determination, prelim. affirmative critical circumstances determination, in part) ("Prelim. Results") and accompanying Decision Memo. for the [Prelim. Results] at 9, C-489-843, (Sept. 14, 2020) available at https://enforcement.trade.gov/frn/summary/turkey/2020-20692-1.pdf (last visited Dec. 5, 2020). Moreover, Commerce determined that critical circumstances existed with respect to Celik's imports of subject merchandise, and, pursuant to section 703 and 733 of the Tariff Act of 1930, as amended 19 U.S.C. §§ 1671b(e)(2) and 1673b(e)(2) (2018),[3] Commerce retroactively suspended liquidation of Celik's entries. See Prelim Results, 85 Fed. Reg. at 59,288.

On November 19, 2020, Plaintiff Celik initiated this action pursuant to 28 U.S.C. § 1581(i) (2018)[4] by concurrently filing a summons and complaint. See Summons, Nov. 19, 2020, ECF No. 1; Compl. Shortly thereafter, Celik moved for a TRO and a preliminary injunction to enjoin Commerce from continuing to reject its

---

[2] Parties and Commerce sometimes use the shorthand "AFA" or "adverse facts available" to refer to Commerce's reliance on facts otherwise available with an adverse inference to reach a final determination. AFA, however, encompasses a two-part inquiry established by statute. See 19 U.S.C. § 1677e(a)–(b). It first requires Commerce to identify information missing from the record, and second, to explain how a party failed to cooperate to the best of its ability as to warrant the use of an adverse inference when "selecting among the facts otherwise available." Id.

[3] Further citations to the Tariff Act of 1930, as amended, are to the relevant provisions of Title 19 of the U.S. Code, 2018 edition.

[4] Further citations Title 28 of the U.S. Code are to the 2018 edition.

untimely submitted questionnaire responses in the ongoing CVD investigation of certain PC Strand from Turkey. See generally Pl.'s Mot; see also Prelim. Results. Plaintiff also filed a motion to consolidate this case with Celik Halat ve Tel Sanayi A.S. v. United States, Ct. No. 20-03843, an action challenging Commerce's decision to reject Celik's untimely questionnaire responses in the ongoing ADD investigation of PC Strand from Turkey. See Pl.'s Mot. to Consolidate Cases, Nov. 19, 2020, ECF No. 6; see also Compl., Nov. 19, 2020, ECF No. 2 (from Dkt. No. 20-03843).

On November 20, 2020, the court held a telephonic conference with counsel for both parties for the purpose of establishing a briefing schedule for the motion for a TRO and a preliminary injunction. See Appearance Sheet, Nov. 20, 2020, ECF No. 10. During the telephone conference, Defendant indicated that the government would be filing a motion to dismiss the complaint for lack of subject matter jurisdiction. The court ordered a schedule providing for the Defendant to respond to Plaintiff's motion by December 4, 2020, and further providing for briefing of the motion to dismiss. See Scheduling Order, Nov. 20, 2020, ECF No. 11. The court also stayed the motion to consolidate pending resolution of the motion to dismiss. See id. In accordance with the court's order, Defendant filed its response to Plaintiff's request for a TRO and a preliminary injunction on December 4, 2020. See generally Def.'s Resp.

Defendant opposes Plaintiff's motion, arguing that Plaintiff is unlikely to succeed on the merits because this Court lacks jurisdiction and there has been no

final agency action. See id. at 7–12. Further, Defendant argues that Plaintiff has not shown that it will suffer irreparable harm absent the injunction, nor has it shown that the public interest and balance of harms weigh in its favor. See id. at 12–19.

## STANDARD OF REVIEW

U.S. Court of International Trade ("USCIT") Rule 65 permits the court to issue a preliminary injunction on notice to the adverse party. See USCIT R. 65(a). To obtain a preliminary injunction, Plaintiff must establish that (1) it is likely to succeed on the merits, (2) it is likely to suffer irreparable harm without a preliminary injunction, (3) the balance of the equities favors Plaintiff, and (4) the injunction is in the public interest. See Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7 (2008); Zenith Radio Corp. v. United States, 710 F.2d 806, 809 (Fed. Cir. 1983) ("Zenith Radio Corp."). In reviewing these factors, "no one factor, taken individually," is dispositive. Ugine & ALZ Belg. v. United States, 452 F.3d 1289, 1292 (Fed. Cir. 2006) (citations omitted) ("Ugine & ALZ Belg."); FMC Corp. v. United States, 3 F.3d 424, 427 (Fed.Cir.1993). However, each factor need not be given equal weight. See Ugine & ALZ Belg., 452 F.3d at 1293; Nken v. Holder, 556 U.S. 418, 434 (2009) ("Nken"). Likelihood of success on the merits and irreparable harm are generally considered the most significant factors in evaluating a motion for injunctive relief. See Nken, 556 U.S. at 434; Amazon.com, Inc. v. Barnesandnoble.com, Inc., 239 F.3d 1343, 1350 (Fed. Cir. 2001).

## DISCUSSION

### I. Likelihood of Success on the Merits

Plaintiff's likelihood of success on the merits depends upon whether: (a) the court has subject matter jurisdiction; (b) Plaintiff has challenged a reviewable final agency action ripe for review; and (c) Commerce abused its discretion in rejecting Plaintiff's questionnaire.

#### A. Subject Matter Jurisdiction

Defendant asserts that Plaintiff is unlikely to succeed on the merits because the court lacks subject matter jurisdiction over the complaint, and has indicated that it intends to file a motion to dismiss.[5] The court concludes that it is likely that the court lacks subject matter jurisdiction over Plaintiff's claims.

The court cannot exercise jurisdiction under 28 U.S.C. § 1581(i) where another subsection "is or could have been available, unless the remedy provided under that other subsection would be manifestly inadequate." Miller & Co. v. United States, 824 F.2d 961, 963 (Fed. Cir. 1987). "While neither Congress nor the courts have provided a precise definition of the term 'manifestly inadequate,' given the clear Congressional preference expressed in [28 U.S.C. § 1581(i)] for review in accordance with [19 U.S.C.

[5] Although Defendant has not yet filed its motion, the court must consider the "likelihood" that it has subject matter jurisdiction over this proceeding in order to analyze the likelihood that Plaintiff will succeed on the merits. The court discusses the "likelihood" that it has jurisdiction in this case, as opposed to conclusively determining whether or not it has jurisdiction, because the motion before the court is for a preliminary injunction and TRO, and not a motion to dismiss.

§ 1516a], the Court must be careful not to interfere in ongoing proceedings absent a clear indication of the inadequacy of a [19 U.S.C. § 1581(c)] review." Sahaviriya Steel Industries Public Co. Ltd. v. United States, 33 CIT 140, 151, 601 F. Supp. 2d 1355, 1365 (2009) (citations omitted) ("Sahaviriya"). Moreover, "[a] party may not expand a court's jurisdiction by creative pleading." Sunpreme Inc. v. United States, 892 F.3d 1186, 1193 (Fed. Cir. 2018) (quoting Norsk Hydro Can., Inc. v. United States, 472 F.3d 1347, 1355 (Fed. Cir. 2006)). Instead, the court must "look to the true nature of the action in the district court in determining jurisdiction of the appeal." Id. (citations omitted).

Recourse under 19 U.S.C. § 1581(c) is not manifestly inadequate when judicial review pursuant to subsection (c) provides the remedy Plaintiff seeks—namely, a remand order directing Commerce to reconsider or further explain its refusal to accept Plaintiff's submissions. That Plaintiff frames its request for relief in such a way as to urge disposition of this cause of action before publication of the final determination cannot serve as the basis for the court's exercise of jurisdiction in this instance.

As such, although styled as an action under 28 U.S.C. § 1581(i), it appears the "true nature" of Plaintiff's claim arises under § 1581(c), see Juancheng Kangtai Chem. Co. v. United States, 932 F.3d 1321, 1326 (Fed. Cir. 2019), which, pursuant to 19 U.S.C. § 1516a, enables Plaintiff to seek judicial review of the final results of a CVD investigation. Indeed, what Plaintiff seeks by asking the court to require

Commerce to accept its submissions is not a temporary relief, but essentially the ultimate relief in a case challenging Commerce's final determination in a CVD investigation. See, e.g., Cyber Power Systems (USA) Inc. v. United States, 44 CIT __, __, Slip Op. 20-130 at 7–8 (Sept. 2, 2020) ("Cyber Systems").

Plaintiff argues that the remedy under § 1581(c) is manifestly inadequate because the harm it alleges is a loss of its U.S. sales market owing to Commerce's failure to accept its questionnaire response. See Pls.' Mot. at 7–9. However, without more, harm attributable to a possible abuse of discretion within an investigation is insufficient to render the remedy afforded by 19 U.S.C. § 1581(c) "manifestly inadequate." See Sahaviriya, 33 CIT at 155, 601 F. Supp. 2d at 1368–69 (citations omitted) (finding the harm attributable to a potentially unauthorized ADD proceeding insufficient to show that relief pursuant to 28 U.S.C. § 1581(c) is manifestly inadequate). The harm alleged by Plaintiff is incidental to participation in a CVD investigation, and is likely insufficient to surmount well-established principles requiring that this court strictly enforce the statutory and administrative requirements for bringing a cause of action under § 1581(c). As such, it is unlikely that this court has subject matter jurisdiction over Plaintiff's complaint.

**B. Final Agency Action**

Defendant argues that Celik is unlikely to succeed on the merits because its claim is not ripe. See Def.'s Resp. at 9–12. "Ripeness is a justiciability doctrine designed 'to prevent the courts, through avoidance of premature adjudication, from

entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.'" Nat'l Park Hospitality Ass'n v. U.S. Dep't of Interior, 538 U.S. 803, 807–08 (2003).

Even if Plaintiff's complaint were properly before the court under 28 U.S.C. § 1581(i), it is unlikely that there is a viable cause of action because Commerce has not yet issued its final determination. It is possible that Commerce may reconsider challenged aspects of its preliminary determination, thus, involving the court at this juncture risks undue entanglement with the administrative process on the basis of contingent future events. See, e.g., Thomas v. Union Carbide Agric. Prods. Co., 473 U.S. 568, 580–81 (1985). As such, the court concludes that ripeness concerns weigh against Plaintiff's likelihood of succeeding on the merits.

**C. Abuse of Discretion**

Under 19 C.F.R. § 351.302, Commerce may reject untimely filed factual submissions. See 19 C.F.R. § 351.302. Commerce has the discretion to set and enforce its own deadlines to ensure finality, and the court reviews Commerce's decision to reject Celik's submissions for abuse of that discretion. See Bosun Tools Co. v. United States, 43 CIT __, __, 405 F. Supp. 3d 1359, 1365–66 (2019) (citing Grobest & I-Mei Industrial (Vietnam) Co. v. United States, 36 CIT 98, 122–23, 815 F. Supp. 2d 1342, 1365–67 (2012) ("Grobest"); NTN Bearing Corp. v. United States, 74 F.3d 1204, 1207–08 (Fed. Cir. 1995) ("NTN Bearing Corp.")). Commerce abuses its

discretion when it rejects information that would not be burdensome to incorporate and which would increase the accuracy of the calculated subsidy rate. See Grobest, 36 CIT at 122–23, 815 F. Supp. 2d at 1365–66; see also NTN Bearing Corp., 74 F.3d at 1207–08 (holding that Commerce abused its discretion where its decision not to use a "straightforward mathematical adjustment" to correct for certain clerical errors led to "the imposition of many millions of dollars in duties not justified under the statute."). Moreover, the court may review Commerce's decision to ensure that it is not "treating similar situations in dissimilar ways." Nakornthai Strip Mill Public Co. v. United States, 32 CIT 1272, 1276, 587 F. Supp. 2d 1303, 1307 (2008) (citations omitted).

Plaintiff submits that Commerce abused its discretion in rejecting its questionnaire responses because Commerce has granted extensions for reasons less severe than the circumstances surrounding the alleged 87-minute delay that gives rise to this action. See Pl.'s Mot. at 16–18. Plaintiff's allegations raise serious concerns regarding Commerce's justification for rejecting Plaintiff's requests for reconsideration; however, these concerns are insufficient to establish that Plaintiff is likely to succeed in light of the jurisdictional and ripeness concerns.

## II. Irreparable Harm

Plaintiff alleges that without the requested relief it will suffer irreparable financial and reputational harm and will lose its business in the United States. See Pl.'s Mot. at 10–12. Defendant contends that it is unclear that Plaintiff's requested

relief would alleviate any of the alleged harms, and further submits that Plaintiff's allegations of financial harm are not actual and imminent, but rather, speculative. See Def.'s Resp. at 12–17. Plaintiff fails to demonstrate that imminent, irreparable harm would occur if its motion is denied.

A finding of irreparable harm requires that a Plaintiff demonstrate "a viable threat of serious harm which cannot be undone." Zenith Radio Corp., 710 F.2d at 809 (citations omitted). Generally, an allegation of financial loss alone, however substantial, which is compensable with monetary damages, is not irreparable harm if such corrective relief will be available at a later date. See Sampson v. Murray, 415 U.S. 61, 90 (1974) ("Sampson"). As such, "[t]he possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." Id. Nevertheless, irreparable harm may take the form of "[p]rice erosion, loss of goodwill, damage to reputation, and loss of business opportunities." Celsis In Vitro, Inc. v. CellzDirect, Inc., 664 F.3d 922, 930 (Fed. Cir. 2012). Substantial loss of business is irreparable harm because, in addition to the obvious economic injury, loss of business renders a final judgment ineffective, depriving the movant of meaningful judicial review. See Doran v. Salem Inn, Inc., 422 U.S. 922, 932 (1975).

Plaintiff offers the affidavit from its Chief Executive Officer, Serdar Seylam, to support its claim that the failure to obtain the relief it seeks will cause it irreparable harm. See Pl.'s Mot. at Ex. H. The affidavit states that Celik will lose its U.S.

customer base, which is a significant portion of its business—the loss of which will affect the employment of its work force, its shareholders, and its future prospects in the U.S. market. See generally id. Plaintiff claims that its customers have already communicated that they could not continue doing business with Plaintiff's U.S. PC Strand business if the preliminary rates that Commerce assigned "are confirmed in the final determination." See Pl.'s Mot. at Ex. H, ¶¶ 11–12. Plaintiff also states that its U.S. customer has already started looking for an alternate supplier of PC Strand.[6] See Pl.'s Mot. at Ex. H, ¶ 17. Plaintiff provides no other information concerning other markets or customers.[7] Plaintiff further alleges that if this court does not grant its motion, it will suffer financial losses in the amount of $96,000 per month. See Pl.'s Mot. at Ex. H, ¶ 15. However, Plaintiff makes these allegations without citing to any evidence of its assets and whether or not they are sufficient to cover the costs. Plaintiff merely states that "[t]he losses will adversely affect our shareholders, employees and their families." See Pl.'s Mot. at Ex. H, ¶ 15. Plaintiff offers no evidence that speaks to the question of whether the alleged harm is unavoidable or irreparable. Moreover, although financial losses and loss of business opportunities

[6] Defendant also avers that Plaintiff's two months delay in seeking relief undermines it claim of imminent harm. See Def.'s Resp. at 13. Plaintiff did not explain its delay in its motion, nor is the basis for the delay obvious to the court.

[7] Plaintiff claims that without the requested relief, it "is facing the loss of its entire U.S. market of PC Strand, which accounts for 70 percent of Celik Halat's total exports in 2019." Compl., ¶ 19. However, Plaintiff does not offer any evidence to support this statement, nor does it offer any evidence concerning the portion of its business that is dependent on exports, generally speaking.

can constitute irreparable harm, the losses generally must be more severe than shown here and be "imminent and unavoidable." Harmoni Int'l Spice, Inc. v. United States, 41 CIT __, __, 211 F. Supp 3d 1298, 1308–09 (Ct. Int'l Trade 2017) ("Harmoni"). Plaintiff's largely unsubstantiated allegations about potential harm to its business do not rise to this level of severity.

Additionally, although it argues that it would be unable to afford the bonds necessary to proceed with the normal administrative and judicial routes to challenge Commerce's determination, see Pl.'s Mot. at Ex. H, ¶ 13, Plaintiff offers no support for the position that it could not secure the capital to fund those bonds from other sources. See Harmoni, 41 CIT at __, 211 F. Supp. 3d at 1308 (denying a preliminary injunction where Plaintiff offered no proof that it had exhausted other avenues to secure capital). Although the need to seek out new markets or resort to alternative sources of capital might cause an adverse economic impact, the standard for irreparable harm requires more than an adverse economic impact. See Corus Grp. PLC v. Bush, 26 CIT 937, 944 (2002), aff'd in part sub nom. Corus Grp. PLC. v. Int'l Trade Comm'n., 352 F.3d 1351 (Fed. Cir. 2003).

Finally, according to Plaintiff, it has already suffered harm to its reputation in the U.S. See Pl.'s Mot. at Ex. H, ¶ 16. Although Plaintiff states this harm will be irreparable absent a grant of its requested relief, see, id., it has done little more than make this broad-based allegation. Beyond Mr. Seylam's affidavit, Plaintiff offers no

evidence that Plaintiff's reputation has been harmed to date, let alone that it will be irreparably harmed going forward.

## III. Balance of Harms

Plaintiff contends that the balance of harms weighs in its favor as it will suffer the loss of its U.S. sales market if the injunction does not issue. See Pl.'s Mot. at 18–19. When considering a motion for a preliminary injunction, the court must "balance the competing claims of injury and must consider the effect" that granting or denying relief would have on each party. Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 24 (2008) ("Winter"). The loss of a significant market may be a significant harm, but the harm caused by piecemeal appellate review of Commerce's procedural determinations is also significant. Interrupting the administrative process and resorting to the judicial process is not a costless endeavor. There are potential costs to the government as well as the domestic industry should it be entitled to relief as a result of the investigation.

Balancing the hardship also requires the court to balance the equities. See Winter, 555 U.S. at 20. Here, although Plaintiff's counsel took some precaution by setting multiple alarms to wake up for the submission, counsel failed to consider time zone differences. See Pl.'s Mot. at 39. For the reasons given, and in light of the would-be harm to the government and the domestic injury, the balance of equities cannot favor Plaintiff whose alleged harms were avoidable.

## IV. Public Interest

Plaintiff requests that this court force Commerce to accept its responses to Sections B and C of the CVD questionnaire, thus asking the court to grant it the ultimate relief it seeks. Where a plaintiff requests the "permanent, ultimate relief," the public interest may "discourage[] issuance of a preliminary injunction." See Cyber Systems, 44 CIT __, Slip Op. 20-130 at 7–8. A preliminary injunction that asks for the permanent, ultimate relief disrupts the status quo and harms the public interest where a hearing on the merits later reveals that the facts of the case demand a contrary conclusion to that provisionally reached in granting the preliminary injunction. See id. The public interest is served by the review of Commerce's procedural determinations upon the review of its final determination. See PPG Indus., Inc. v. United States, 2 CIT 110, 112–13, 525 F. Supp. 883, 885 (1981) (discussing the Customs Court Act of 1980).

## CONCLUSION

For the foregoing reasons it is

**ORDERED** that Plaintiff's motion for a TRO and a preliminary injunction are denied.

/s/ Claire R. Kelly
Claire R. Kelly, Judge

Dated: December 6, 2020
New York, New York